IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**LESHEA SMITH**                                                                                    **PLAINTIFF**

**V.**                                                                                    **NO.: 4:13CV60-M-V**

**ISLE OF CAPRI CASINOS, INC.**                                                    **DEFENDANT**


**MEMORANDUM OPINION**

This cause comes before the court on the motion of Isle of Capri Casinos, Inc. ("Isle of Capri") seeking summary judgment [51] as to the claims against it. Plaintiff Leshea Smith[1] has responded in opposition to the motion,[2] and the court, having considered the memoranda and submissions of the parties, concludes that Isle of Capri's motion for summary judgment should be granted in part and denied in part.

**I. BACKGROUND**

This is an employment action between Leshea Smith and her former employer Isle of Capri. In July 2011, Isle of Capri's casino in Lula, Mississippi hired Smith as a runner for one of its restaurants, Calypso's Buffet. It is undisputed that Smith was an at-will employee. Smith's daily duties at work consisted of wiping tables, sweeping, and ensuring the buffet was stocked and organized. Smith's duties were later changed to cooking full time, but her official job title of runner never changed.

Around October 2011, issues began to arise for Smith at her workplace. During that month, Smith received an official reprimand, signed and acknowledged by Smith, for missing

---
[1] Isle of Capri points out in its motion that the plaintiff's name is actually spelled "Lashea" but that the case has been filed under the caption of "Leshea." Smith is also now married and goes by the name "Moore".
[2] As a preliminary matter, Isle of Capri is correct in its assertion that Smith was without justification in untimely filing her response in opposition to the casino's motion for summary judgment. The court, however, has decided to consider Smith's response and her arguments therein in its analysis.

1

multiple days of work to take care of her injured daughter. At this time, Smith first began to experience problems with Calypso Buffet's executive chef, DeVeonse Atkins. According to Smith, Atkins first sexually harassed her when he intentionally brushed Smith's buttocks with his hands and pelvic area while the two attempted to pass each other in the kitchen hallway. Atkins allegedly remarked, "Well, excuse me, baby girl," while Smith made no comment and continued walking. Smith indicates in her deposition that another employee witnessed the event. Other than Smith's own testimony, there is neither evidence in the record indicating a complaint was made nor any testimony given by a witness of the event.

At some point in the ensuing months of 2011, Smith experienced her second alleged instance of harassment by Atkins. Smith stated in her deposition that this incident occurred when she attempted to reach over Atkins to retrieve vegetables from the kitchen refrigerator. Smith, admittedly unaware of the location of the items she needed, avers that Atkins then came behind her and leaned on her with his pelvic area in an phony attempt to help reach the vegetables. While reaching for Smith's needed items, Atkins reportedly said, "I will get it for you." In response, Smith removed Atkins by hand and walked out of the refrigerator.[3] There were no witnesses to the event, and Smith provides no evidence that a complaint was made.

The third alleged incident of sexual harassment between Smith and Atkins occurred in December 2011. Smith alleges that she expressed to Atkins a need to take time off from work to care for her daughter to which Atkins responded by requesting that she come to his office later. Smith stated in response that she could not do so because her boyfriend and fellow employee, Ricky Moore, would not allow her to do so. Atkins then grabbed Smith's hand and stroked his left hand down Smith's back. Smith avers that a fellow employee witnessed the event and

---

[3] What exactly transpired during this encounter is unclear because Smith chose to demonstrate part of the event during her deposition rather than verbalize it and provided no further evidence in the record of what took place. Therefore, the court can only attempt to piece together what took place due to the lack of clarity.

objected to Atkins' behavior to which Atkins allegedly responded, "I got it. I'll take good care of her." Smith has provided no evidence in the record indicating a complaint was made or any testimony given by a witness of the event.

The fourth occurrence of sexual harassment is purported by Smith to have taken place in January 2012. Smith claims Atkins stood behind her and grazed her with his pelvic area when she rose from picking something up from the floor. Next, Atkins attempted to help Smith but grazed her breast with his hand while doing so. Smith testified that she complained of this instance to a Chef Deloris and that another employee witnessed the event. Other than Smith's own testimony, there is neither evidence in the record indicating a complaint was made nor any testimony given by a witness of the event.

The fifth occurrence of sexual harassment is averred by Smith to have transpired at the end of January 2012. Smith alleges that Atkins approached her from behind to check on her preparation of pizzas. When Smith rose from her work, Atkins' lips kissed[4] Smith's neck despite an ample of amount of time to avoid contact. Atkins then came to Smith's side, grabbed her hand, and demonstrated how to cut the onions the proper way. Smith claims that a fellow employee witnessed the event but made no statement at the time regarding the events. There is no testimony by the alleged witness present in the record or evidence that a complaint was made.

The sixth and final incident of sexual harassment complained of in this action occurred on February 3, 2012. At some point during Smith's shift, Atkins allegedly said to Smith, "Why are you so quiet? Why are you not talking today? What's going on, baby girl?" After eliciting a response of "Nothing" from Smith, Atkins allegedly returned to her and said, "What's wrong with you, sexy? What's going on? Tell me what's going on," while rubbing Smith's back. Once

---

[4] A prior statement by Smith indicates that Atkins "[a]lmost literally kissed [Smith] and [that] his mouth touched [Smith's] neck."

3

again, after eliciting no response, an upset Atkins allegedly stated, "So you're not going to say anything to me at all? I'm your boss. You need to give me some kind of answer. What's going on? You can talk to me." Smith avers that Atkins then began to curse and make derogatory remarks. Smith claims that an individual apparently known to all as Chef Deloris and Ricky Moore witnessed the event, resulting in Chef Deloris transferring Smith to the salad station. There is no testimony in the record from Chef Deloris regarding that event.

The events which led to Smith's suspension and eventual termination also occurred on February 3, 2012. During Smith's shift, Atkins requested that Smith prepare seafood pizzas. According to Smith, Atkins expressed his appreciation for the quality of her work, saying, "They looking good baby girl. That's looking good. Make me more like that," and later stated, "Keep it going. Keep it going. Because they're loving it." Upon Atkins' request, Smith claims that she retrieved more pizza dough to thaw and subsequently made more pizzas. Later, Smith began making different types of pizza at the request of Chef Deloris and another employee named David Holloman.[5] Atkins eventually returned to Smith's station and allegedly rubbed down her back saying, "What's going on baby girl? Where are my seafood pizzas at?" Atkins told Smith that when she finished with her current work she needed to make the pizzas he wanted.[6] Thereafter, Atkins proceeded to alert David Hobbs, Director of the Food and Beverage Department, of Smith's insubordinate behavior, i.e. Smith's failure to make more seafood pizzas.

According to Atkins' voluntary statement (and with nothing entered into the record by Smith to the contrary), Hobbs then advised Shirley Conway, Manager of the Food and Beverage

---

[5] Throughout Smith and Ricky Moore's testimony, they refer to an employee name David Holloman. Joseph Oakley, Vice President and General Manager of the casino, in his declaration states that he has no knowledge of such employee and that the Isle of Capri's human services department has no record of someone by that name working for the casino.

[6] Atkins' version of events surrounding Smith's suspension differs from those testified to by Smith herself. As a part of the casino's investigation into the matter, Atkins' gave a written statement averring that Smith would not prepare the proper type of pizza or prepare the dough as he requested more than once. Smith contends in her deposition that she did everything Atkins requested.

Department, to suspend Smith pending an investigation. Joseph Oakley, Isle of Capri's Vice President and General Manager, gave a sworn statement that an internal investigation into the dispute was then conducted. Upon completion of the investigation, Oakley avers that Hobbs recommended Smith's termination to Oakley and Charlisa Shelly, Head of Human Resources. Oakley and Shelly concurred with Hobbs' recommendation which culminated in their joint decision to terminate Smith's employment with the Isle of Capri on February 6, 2012.

On February 27, 2013, Smith brought this suit against the Isle of Capri. The action includes claims of sexual harassment and retaliation against Isle of Capri pursuant to Title VII of the Civil Rights Act of 1964, as amended in 1991, 42 U.S.C. Section 2000e—et seq. Smith additionally brings the state law claims of assault, battery, and intentional infliction of emotional distress against Isle of Capri.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine dispute as to a material fact exists when, after considering the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, a court determines that the evidence is such that a reasonable jury could return a verdict for the party opposing the motion. *LeMaire v. La. Dep't of Transp. & Dev*., 480 F.3d 383, 387 (5th Cir. 2007) (citations omitted). The court must draw all justifiable inferences in favor of

the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, L.Ed. 202 (1986). The existence of a factual dispute does not preclude summary judgment if the dispute is neither material nor genuine. *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995) .

**III. ANALYSIS**

    **A. Sexual Harassment Claim**

Title VII provides that an employer may not "discriminate against an individual with respect to [her] compensation, terms, conditions, or privileges of employment because of [her] ... sex[.]" 42 U.S.C. § 2000e–2(a)(1). Sexual harassment constitutes unlawful discrimination under Title VII. *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 66, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). If the harassing employee is the victim's co-worker, the employer may be held liable only if it was negligent in controlling working conditions. *Vance v. Ball State Univ.*, ––– U.S. ––––, ––––, 133 S.Ct. 2434, 2439, 186 L.Ed.2d 565 (2013). "In cases in which the harasser is a 'supervisor,' however, different rules apply," and the employer may be held vicariously liable. *Id.* (internal citation omitted).

"[A]n employee is a 'supervisor' for purposes of vicarious liability under Title VII if he or she is empowered by the employer to take tangible employment actions against the victim." *Id.* at 2439 (internal citations omitted). In *Vance*, the majority held "that an employer may be vicariously liable for an employee's unlawful harassment only when the employer has empowered that employee to take tangible employment actions against the victim, i.e., to effect a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.' " *Vance*, 133 S.Ct. at 2443 (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742,

6

761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)). "The ability to direct another employee's tasks is simply not sufficient" to give rise to "supervisor" status. *Id.* at 2448. Instead, supervisors are a "*distinct class* of agent [empowered] to make economic decisions affecting other employees under his or her control.... Tangible employment actions are the means by which the supervisor brings the official power of the enterprise to bear on subordinates." *Id.* (internal quotation marks and citation omitted) (emphasis in original).

In viewing the appropriate evidence in a light most favorable to Smith, the court finds that questions of fact exist as to Atkins' supervisory status. The statements in Smith's deposition that touch upon the subject of Atkins' control over her employment indicate at least an ability to decide her daily duties. Although Smith admits that she personally is unaware of who actually made the decision to hire or fire her (and provided no evidence to the contrary), it undoubtedly was Atkins' recommendation that Smith be reprimanded for insubordination that initiated the termination process. Moreover, Smith's own testimony indicates that Atkins was involved in her hiring to some degree,[7] and Ricky Moore's testimony tends to indicate that Atkins may have input regarding the promotion or demotion of certain employees.[8] Likewise, the court finds the references to Atkins as a supervisor in Isle of Capri's internal documents to be yet another factor that could render reasonable a finding that Atkins' was delegated authority that allowed him to take some part in Smith's hiring, firing, promotion, and discipline.

To be sure, none of the aforementioned factors whether viewed collectively or individually are conclusive as to Atkins' supervisory status, but as a whole they do create questions for the finder of fact regarding whether Atkins' possessed the ability to make effectively determinative employment decisions against Smith. Because Atkins has failed to

---

[7] Smith stated in her deposition that six different people were present when she was interviewed and hired and that Atkins was one of the six.

7

show that no genuine issue of material fact exists regarding Atkins' supervisory status, the court finds that Isle of Capri's motion for summary judgment as to Smith's hostile work environment claim should be denied.

### B. Retaliation Claim

Under § 704 of the Civil Rights Act of 1964, it is unlawful "for an employer to discriminate against any of his employees ... because [the employee] has opposed any practice made an unlawful employment practice by [Title VII], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e–3 (2000). A retaliation claim that is premised on a pretextual rationale for dismissal is analyzed under the *McDonnell Douglas* framework. *Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 807, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). *McDonnell Douglas* establishes certain rules for burden shifting between the plaintiff and the defendant employer: (1) first, the employee must demonstrate a *prima facie* case of retaliation; (2) the burden then shifts to the employer, who must state a legitimate non-retaliatory reason for the employment action; and (3) if that burden is satisfied, the burden then ultimately falls to the employee to establish that the employer's stated reason is actually a pretext for unlawful retaliation. *Septimus*, 399 F.3d at 607.

In order to prove a *prima facie* case of retaliation Smith must demonstrate that: (1) she engaged in protected activity; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action. Under Title VII, an employee has engaged in protected activity if she has "opposed any practice made an unlawful

employment practice under [Title VII]." 42 U.S.C. § 2000e–3(a). *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007) (internal citations and quotation marks omitted).

In this action, Smith avers in her complaint that Atkins, upon learning of Smith's complaints against him, began to assign Smith to work details outside of her original job mandate. However, Smith later qualified her retaliation claim in her deposition by stating that it is solely based upon her belief that she was terminated for her refusal to have sex with Atkins.

Isle of Capri contends that Smith's contentions do not satisfy the requisite "protected activity" or causation elements of a retaliation claim. Citing the Fifth Circuit case of *Lemaire v. Louisiana Dept. of Transp. and Development*, Isle of Capri argues that Smith's mere protest or refusal to acquiesce to Atkins' alleged sexual advances does not constitute a "protected activity." 480 F.3d 383, 389 (5th Cir. 2007). Relying on the Fifth Circuit's opinion in *Kennerson v. Guidry*, Isle of Capri contends that Smith's subjective belief that she was fired for refusing to have sex with Atkins is insufficient to demonstrate causation and that her termination for insubordination is pretextual. 135 F. App'x 639, 641 (5th Cir. 2005).

The court is inclined to agree with Isle of Capri's argument on both counts. First, Smith's retaliation claim, as qualified by her deposition, does not assert that Atkins fired her due to a complaint made but rather her failure to submit to his alleged sexual advances. Such a rejection does not constitute a "protected activity" for the purposes of a retaliation claim under Title VII. *See Frank v. Harris County*, 118 Fed. Appx. 799, 804 (5th Cir. 2004); *Lemaire v. Louisiana Dept. of Transp. and Development*, 480 F.3d 383, 389 (5th Cir. 2007).

Second, even if Smith had engaged in a "protected activity," she offers no evidence that her termination was in the least part due to her participation in that "protected activity." In her second deposition, Smith admitted that Atkins never expressly requested that she have sex with

him and that she is actually unaware of who made the decision to fire her. Because of Smith's lack of knowledge and evidence surrounding her termination, she not only fails to make a *prima facie* showing of a causal connection but also fails to offer any evidence that Isle of Capri's termination of her for insubordination is merely pretext (*McDonell Douglas's* third rule). *Kennerson v. Guidry*, 135 F. App'x 639, 641 (5th Cir. 2005) (stating that in "a Title VII employment discrimination or retaliation case, plaintiff's subjective belief [is] an insufficient defense to a summary judgment motion."); *Moore v. McCullough*, 351 F. Supp 2d 536, 541 (N.D. Miss. 2005) (granting summary judgment for the employer when the only evidence offered by the employee to suggest the employer's legitimate, non-discriminatory reason for terminating him was pretextual was the employee's own subjective belief).

**C. State Law Claims**

Isle of Capri urges the court in its motion for summary judgment to dismiss all of Smith's state law claims due to their being time barred by Mississippi's applicable statute of limitations and common law.

"All actions for assault [and] assault and battery… shall be commenced within one (1) year next after the cause of such action accrued, and not after." Miss. Code. Ann. § 15-1-35 (West). In *Jones v. B.L. Development Corporation*, the Mississippi Court of Appeals held that a one year statute of limitations also applies to intentional infliction of emotional distress claims arising out of sexual harassment. 940 So. 2d 961, 964-65 (Miss. Ct. App. 2006).

Smith's final contact with Atkins occurred on February 3, 2012 which was also the date of Smith's suspension by the Isle of Capri. Smith subsequently filed this lawsuit on February 27, 2013. Because Smith failed to bring her claims for assault, battery, and intentional infliction of

emotional distress within the one-year time period required by Mississippi statutory and common law, the court finds the aforementioned claims to be time-barred and therefore, dismissed.

In light of the foregoing, it is ordered that Isle of Capri's motion for summary judgment be denied as to Smith's hostile work environment claim and granted as to Smith's retaliation claim with prejudice.

So ordered this 5th day of June, 2014.

**/s/ MICHAEL P. MILLS**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**